# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DEB STORES HOLDING LLC, *et al.*, | ) | Case No. 14-12676 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| DEB SHOPS SDE-COMMERCE, | ) | |
| Debtor in Possession, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 16-51004 (KG) |
| | ) | |
| 2253 APPAREL, INC. d/b/a/ CELEBRITY PINK, | ) | |
| | ) | |
| Defendants. | ) | **Re: D.I. 27** |

## MEMORANDUM OPINION

2253 Apparel, Inc. d/b/a/ Celebrity Pink ("Celebrity Pink") brought a motion for partial summary judgment (the "Motion") against Deb Shops SDE-Commerce LLC (the "Plaintiff" or "SDE"). Celebrity Pink seeks partial summary judgment on the claim (the "Preference Claim") to the extent that such claim exceeds $4,473.02.

### Facts

On December 4, 2014 (the "Petition Date"), Deb Stores Holding LLC, and its affiliated entities (collectively, the "Debtor"), each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. D.I. 1.[1] The Debtor is a mall based retailer in

---

[1] Any references to "D.I." refer to the main proceeding in this case. *See In re Deb Stores Holding LLC*, No. 14-12676 (Bankr. D. Del. Filed Dec. 4, 2014). Any references to "Adv. D.I." refer to this adversary proceeding brought by the Plaintiff against Celebrity Pink. *See Deb Shops SDFMC*

the juniors "fast-fashion" specialty sector, offering moderately priced and fashionable sportswear, dresses, coats, lingerie, accessories and shoes for junior and plus size females. Declaration of Dawn Robertson in Support of First Day Motions, ¶ 6, D.I. 3. Celebrity Pink, a designer, manufacturer and distributor of denim apparel, sold merchandise to certain entities of the Debtor prior to the petition date, fulfilling a total of twenty-one purchase orders (the "Purchase Orders"). Declaration of Cristina Veneracion, dated November 19, 2017 ("Veneracion Decl.") ¶¶ 7-8. Adv. D.I. 46-3.

Three of the Purchase Orders were made prior to the Transfers (the "historical period") and are not subject to avoidance under the Bankruptcy Code (the "Historical Purchase Orders"). Veneracion Decl. ¶ 9. The terms governing the Historical Period Purchase Orders were "Net 10 EOM +30," meaning the full amount is due within ten days of the end of the month, plus thirty days from the receipt of the merchandise. *Id.* at ¶ 10. All three invoices were paid in full in advance of their due date. *Id.* at ¶ 11.

Debtor placed the other eighteen Purchase Orders, which are the Transfers in question, on May 2, 2014 (the "preference period" and the "Preference Period Purchase Orders"). *Id.* at ¶ 12. Deb Shops SDW LLC ("SDW") and Deb Shops SDE – Commerce LLC ("SDE"), both related entities to the Debtor, placed the Preference Period Purchase Orders. *Id.* On October 1, 2014, Celebrity Pink agreed to satisfy the eighteen (18) Preference Period Purchase Orders, but required that the payment terms be as follows: "[SDW and/or SDE] will wire 75% of the invoice amount prior to X Los Angeles. The

---

*LLC v. 2253 Apparel, Inc. d/b/a Celebrity Pink (In re Deb Stores Holding LLC)*, No. 16-51003 (Bankr. D. Del. Filed June 10, 2016).

balance 25% is Net 30 Days ROG."[2] *Id.* at ¶ 13. These terms were different than the terms used for the Historical Period Purchase Orders of Net 10 EOM +30.

On October 2, 2014, Deb Shops SDFMC ("SDFMC") wire transferred $258,153.75.[3] *Id.* at ¶ 18. However, the invoices from Celebrity Pink regarding the Preference Period Purchase Orders were not generated and sent until October 3, 2014, totaling $338,763.00. *Id.* at ¶ 14. The goods mentioned in the Preference Period Purchase Orders were delivered on October 7, 2014, and October 8, 2014. *Id.* at ¶ 16. On November 5, 2014, SDFMC issued a check for $50,951.56. *Id.* at 19. On November 13, 2014, SDE sent a check to Celebrity Pink in the sum of $18,112.32.

On December 4, 2014, the Debtor filed the Petition. Declaration of Frederick B. Rosner, dated December 20, 2017 ("Rosner Decl.") ¶ 4. On June 10, 2016, the Plaintiff filed the Complaint, seeking avoidance of the Transfers totaling $309,105.31. Adv. D.I. 1. On July 20, 2016, Celebrity Pink untimely filed an answer to the Complaint, at which point the Court had already granted a default judgment (the "Default Judgment") in favor of the Plaintiff. Rosner Decl. ¶¶ 13, 18. Celebrity Pink filed its *Motion to Reopen Adversary Proceeding*, requesting that the Court vacate the Default Judgment. Adv. D.I. 13. The Court granted Celebrity Pink's request, vacated the Default Judgment and received an answer and amended answer to the Complaint. Rosner Decl. ¶ 18. On August 4, 2017, without the parties engaging in any formal discovery, Celebrity Pink filed the Motion and subsequent briefing ensued. *Id.* at ¶¶ 19-24.

---

[2] ROG stands for "receipt of goods."
[3] This amount represents roughly 75% of total amount requested under the Invoices.

## Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this District of Delaware is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b) arising under the Bankruptcy Code.

## Legal Standard

Rule 56 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56. The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.; see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is solely placed on the moving party to demonstrate no genuine issue of material fact exists, and if properly shown, judgment will be granted in its favor. *Id.; see also Bailey v. United Airlines*, 279 F.3d 194, 198 (3d Cir. 2002).

## Discussion

In the Motion, Celebrity Pink argues that the Plaintiff cannot show that the requisite debtor-creditor relationship existed as required under Section 547 of the Bankruptcy Code. Furthermore, Celebrity Pink argues that based upon the information provided, there was only $4,473.02 left in unpaid invoices for the nine Preference Period Purchase Orders placed by SDE at the time that SDE made the $18,112.32 transfer. Celebrity Pink states that the "75% invoice amount prior to X Los Angeles" language

4

strictly governed all exchanges in the deal, and that performing a basic mathematical calculation results in a capped recovery for SDE of $4,473.02.[4]

When a motion for summary judgment is filed, "[i]f discovery is incomplete in any way material to [the] motion, [the court] is justified in not granting the motion." *Doe v. Abington Friends School*, 480 F.3d 252, 257 (3d Cir. 2007).  "A Rule 56(d) motion is essentially 'the proper recourse of a party faced with a motion for summary judgment who believes that additional discovery is necessary before he can adequately respond to that motion.'" *Square Ring, Inc. v Doe*-1, 2014 WL 1116960, at *3 (D. Del. March 18, 2014) (quoting *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 309 (3d Cir. 2011)).

To properly bring a Rule 56(d) motion, the party asserting such a defense should state what particular information is sought, how such information would preclude summary judgment and why it has not been obtained previously. *See Superior Offshore Int'l, Inc. v. Bristow Grp.*, 490 Fed. Appx. 492, 501 (3d Cir. 2012).  This three-part test is meant to offer guidance to the court in exercising its discretion under Rule 56(d) and is not exhaustive. *Id.*  When the court determines that facts are unavailable to the non-moving party, the court may (1) defer considering the motion for summary judgment; (2) allow the parties to take discovery or obtain affidavits; or (3) issue any other appropriate order. Fed. R. Civ. Pro. 56(d).

---

[4] When the Preference Period Purchase Orders were placed, SDW placed nine orders worth $319,965.00 and SDE placed nine orders worth $18,198.00, totaling $338,763.00. Celebrity Pink argues that when SDFMC wired $258,153.75, this was equivalent to 76.2% of the $338,763.00 worth of invoices.  Applying this percentage to the SDW and SDE entities outstanding invoices, this left $76,136.23 to be paid for SDW and $4,473.02 left for SDE.  Therefore, when SDE transferred the $18,112.32, only $4,473.02 of that payment counted towards SDE's fulfillment of its invoice.

The main argument by Celebrity Pink against avoidance of the Preference Claim is that no debtor-creditor relationship existed between Celebrity Pink and SDE. In order to succeed on its claim, SDE must show that the transfer was made "to or for the benefit of a creditor," and "for or on account of an antecedent debt." 11 U.S.C. §§547(b)(1)-(2).

The Plaintiff responds by stating that discovery is needed to understand Celebrity Pink's accounting methods. Celebrity Pink's argument states that after a "proper accounting" the payments left only $76,136.23 unpaid for the Preference Period Purchase Orders made by SDW and $4,473.02 unpaid for the Preference Period Purchase Orders made by SDE. The Plaintiff argues that there is a factual issue as to what constitutes a "proper accounting."

The Court agrees with the Plaintiff and finds that further discovery is necessary. When Celebrity Pink received the initial wire transfer of $258,153.75, counsel argues that the transfer reduced the SDE and SDW invoices each by 76.2%. *See* n. 3 (supra). This pattern allegedly continued when the November 5, 2014, payment was made, as well as the November 13, 2014, payment. Counsel for Celebrity Pink argues these facts and does not provide any factual basis to support its accounting method. There are several ways in which companies may account for monies paid and received, First in Last Out ("FILO"), First in First Out ("FIFO), etc. Whether an entity uses FILO, FIFO, a combination of both or another accounting method is an internal decision.

The Court accepts that Celebrity Pink *may* simply take any invoices received and apply them to outstanding debts on a pro-rata basis, as presented by counsel for Celebrity Pink, but absent any factual basis for this accounting method, the Court cannot purport to know how the monies were applied once received by Celebrity Pink. The Plaintiff has argued that this information may be attainable through formal discovery, and, if revealed, will help analyze the amount avoidable in this case.

Celebrity Pink argues no discovery is needed because Celebrity Pink was not aware that Deb Shops was multiple entities and Celebrity Pink treated SDE, SDW and SDFMC as a single entity under the Deb Shops name. However, Celebrity Pink admits that they were aware of two separate entities placing the purchase orders on May 2, 2014. Veneracion Decl. ¶ 11, Ex. E. In fact, SDW and SDE had their own headings with the individual entity listed on the invoices sent to Celebrity Pink. *Id*. While the accounting arm of Celebrity Pink may have treated SDE, SDW and SDFMC as one single entity, Celebrity Pink's own evidence demonstrates that at least one individual understood there were separate entities. Whether individuals passed along that knowledge or applied it to the payments received remains a factual issue. Discovery may yield an answer.

### Conclusion

Using the *Superior Offshore* three-part test as guidance, the Court finds that the Plaintiff has stated that discovery is needed to determine how Celebrity Pink applies its accounting methods, that such information would assist in establishing whether or not only $4,473.02 was left due for the nine purchase orders of SDE and that no discovery took place or was initiated by Celebrity Pink before filing the Motion. Under Rule 56(d), the Court exercises its discretion to allow the parties to take formal discovery before ruling on the motion for summary judgment. The Court will issue an order giving effect to its ruling.

Dated:  March 28, 2018                                    _____
                                                                              KEVIN GROSS, U.S.B.J.